**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD LENARD, | ) | Case No. 1:24-CV-01752-JRK |
| | ) | |
| Petitioner, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| DOUG LUNEKE, WARDEN | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I. INTRODUCTION

Petitioner, Richard Lenard ("Mr. Lenard"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Lenard is serving a term of fourteen years and four months after being convicted of felonious assault, kidnapping, aggravated assault, and assault.

Mr. Lenard asserts a single ground for relief. Respondent ("Warden"), filed an answer/return of writ on March 27, 2025. (ECF No. 10).[1] Mr. Lenard filed a traverse on April 7, 2025. (ECF No. 11).

This matter was referred to me on December 11, 2024 under Local Rule 72.2 to prepare a report and recommendation on Mr. Lenard's petition. (*See* ECF non-document entry dated December 11, 2024). For the reasons set forth below, I recommend that Mr. Lenard's petition be DISMISSED and/or DENIED. I further recommend that the Court not grant Mr. Lenard a certificate of appealability.

---

[1] Mr. Lenard named Warden Doug Luneke as the respondent in his petition. (ECF No. 1). In the return of writ, respondent states that Mr. Lenard is currently incarcerated at Noble Correctional Institution, and that Warden Jay Forshey is the warden of that institution, and thus the proper respondent in this proceeding. (ECF No. 10, PageID # 69, n.1; *see also* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A700503 (last accessed August 1, 2025). I therefore recommend that the Court substitute Warden Jay Forshey for Warden Doug Luneke as the respondent.

## II.   RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth Appellate District summarized the facts as follows:

> {¶ 2} The victim and Lenard had a tumultuous and, at times, a violent relationship. In October 2016, the two fought over social media postings that led to physical altercation in which the victim was injured. After being punched, the victim ran into the kitchen of the residence where both were living and grabbed a knife to defend herself. Lenard disarmed the victim. He then dragged her into the living room where he forced her to strip and lie on the floor. Lenard then beat her with his belt. After the beating, Lenard took a knife and threatened to cut the victim's hair in the attempt to end the altercation (according to Lenard) or to terrorize the victim into further psychological submission (according to the state).

> {¶ 3} More than a month later, the couple fought again. This time the altercation was more violent, and the victim ended up in the hospital, although at trial they both claimed to have mutually fought with fists and heavy objects used as weapons. Lenard testified that the victim threw a jar of pennies and a dresser at him, so Lenard began punching the victim in the face. At one point during the altercation, the victim was bleeding enough that blood spattered on the wall and the carpet. Lenard put rubber gloves on before punching the victim further.

> {¶ 4} The fight ended with both allegedly falling down a flight of stairs, as an explanation for the victim's serious injuries. Lenard had sprained his wrist and ankle, and claimed to have scars on his forehead from the victim's conduct. The next day, the victim was walking on the street and a passerby called the police because of the victim's appearance. Her injuries from the second altercation were far more serious than the first. After being admitted to the hospital, the victim was diagnosed with a concussion, bleeding in her brain, and multiple bruises over her body.

(ECF No. 10-1, Exhibit 24); *State v. Lenard*, Nos. 105342 and 105343, 2018 WL 2435606, 2018-Ohio-2070 (8th Dist. May 24, 2018).

### III.  PROCEDURAL HISTORY

####    A.  State Court Conviction

On January 8, 2016, Mr. Lenard was indicted in the Cuyahoga County Court of Common Pleas in case number 15-CR-602274 on: (1) one first-degree felony count of attempted murder in violation of O.R.C. §§ 2923.02 and 2093.02(A); (2) one second-degree felony count of felonious assault in violation of O.R.C. § 2903.11(A)(1); (3) one first-degree felony count of aggravated robbery in violation of O.R.C. § 2911.01(A)(3); (4) one first-degree felony count of kidnapping in violation of O.R.C. § 2905.01(A)(5); (5) one fourth-degree felony count of disrupting public services in violation of O.R.C. § 2904.04(A)(3); and (6) one first-degree misdemeanor count of criminal damaging or endangering in violation of O.R.C. § 2909.06(A)(1). (ECF No. 10-1, Exhibit 1).

On the same day, Mr. Lenard was indicted in the Cuyahoga County Court of Common Pleas in case number 15-CR-602350 on: (1) one second-degree felony count of felonious assault in violation of O.R.C. § 2903.11(A)(1); (2) two second-degree felony counts of felonious assault in violation of O.R.C. § 2093.11(A)(2); (3) one first-degree felony count of aggravated robbery in violation of O.R.C. § 2911.01(A)(3); (4) one first-degree felony count of kidnapping in violation of O.R.C. § 2905.01(A)(3); (5) one first-degree felony count of kidnapping in violation of O.R.C. § 2905.01(B)(2); (6) one fourth-degree felony count of disrupting public services in violation of O.R.C. § 2904.04(A)(3); and (7) one first-degree misdemeanor count of criminal damaging or endangering in violation of O.R.C. § 2909.06(A)(1). (ECF No. 10-1, Exhibit 2). On January 22, 2016, Mr. Lenard pled not guilty to all charges in both cases. (ECF No. 10-1. Exhibits 3-4). The cases were joined for trial at the State's request.

The cases proceeded to trial. At the close of the State's evidence, the trial court granted

3

Mr. Lenard's motion to dismiss the attempted murder, aggravated robbery, and disrupting public services counts. (ECF No. 10-1, Exhibits 7-8). On October 27, 2016, the jury convicted Mr. Lenard of one count of felonious assault, three counts of kidnapping, one lesser-included count of aggravated assault, and three lesser-included counts of assault. (ECF No. 10-1, Exhibits 11-12). The jury acquitted Mr. Lenard on the remaining charges. *Id*. On November 4, 2016, the trial court sentenced Mr. Lenard to an aggregate term of 14 years and four months in prison. (ECF No. 10-1, Exhibits 13-14).

**B.  Direct Appeal**

On January 6, 2017, Mr. Lenard, through new appellate counsel, timely filed a notice of appeal to the Eighth Appellate District in both cases. (ECF No. 10-1, Exhibits 15-16). Mr. Lenard filed a motion to consolidate the appeals, which the Eighth Appellate District granted. (ECF No. 10-1, Exhibits 17-20).

On June 29, 2017, Mr. Lenard filed his appellate brief, raising the following assignments of error:

   1. The trial court erred by permitting a detective to provide opinion testimony not reasonably based on experience or expert knowledge.

   2. The trial court erred by failing to merge Counts 7 and 8 as requested by defense counsel.

   3. The trial court erred by imposing court costs in the entry without imposing them in open court.

(ECF No. 10-1, Exhibit 21).

On May 24. 2018, the Eighth Appellate District affirmed. (ECF No. 10-1, Exhibit 24). On February 4, 2019, Mr. Lenard, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court, along with a motion for leave to file a delayed appeal. (ECF No. 10-1, Exhibit 25). On April 3, 2019, the Ohio Supreme Court denied Mr. Lenard's motion to file a delayed appeal

4

and dismissed the appeal. (ECF No. 10-1, Exhibit 26).

### C.  First Motion for a New Trial

On November 14, 2016, before he filed his notice of appeal to the Eighth Appellate District, Mr. Lenard, acting *pro se*, filed a motion for a new trial in both cases in the trial court pursuant to O.R.C. § 2945.79. (ECF No. 10-1. Exhibits 27-28). In his motion, Mr. Lenard asserted that he went to high school with one of the jurors, Juror Number Five, and that there was personal animosity between the two of them. Mr. Lenard argued that Juror Number Five's presence on the jury denied him his right to an impartial jury. Mr. Lenard further argued that his trial counsel was ineffective in failing to seek Juror Number Five's exclusion.

On December 7, 2017, the trial court held that it was without jurisdiction to hear Mr. Lenard's motions for a new trial in light of his then-pending appeal. (ECF No. 10-1, Exhibits 29-30). On February 24, 2020, after the end of Mr. Lenard's direct appeal, the trial court denied Mr. Lenard's motion. (ECF No. 10-1, Exhibits 31-32).

On November 10, 2021, Mr. Lenard, acting *pro se*, filed a motion for leave to file a delayed appeal in the Eighth Appellate District. (ECF No. 10-1, Exhibit 33). The Eighth Appellate District initially denied Mr. Lenard's motion, but later granted his motion for reconsideration, holding that he had not been provided timely notice of the trial court's ruling. (ECF No. 10-1, Exhibits 35, 37).

On March 28, 2022, Mr. Lenard filed his appellate brief, raising the following assignments of error:

> 1. The trial court erred to the prejudice of appellant when it denied the motion for a new trial without a hearing because it failed to follow Ohio voir dire procedure which would have revealed potential bias or prejudice to provide a valid basis for challenge for cause.

2. Defense counsel was ineffective breaching his duty to investigate violating appellants constitutional right to a fair and impartial jury when he permitted favoritism to the prosecution.

(ECF No. 10-1, Exhibit 38).

On September 15, 2022, the Eighth Appellate District affirmed, holding that Mr. Lenard's motion was untimely and that his claims were barred by the doctrine of res judicata. (ECF No. 10-1, Exhibit 41). The court also held that Mr. Lenard's arguments had been considered and rejected in connection with his petition for postconviction relief (discussed below).

**D.  Petition to Vacate or Set Aside Sentence**

On June 15, 2018, Mr. Lenard, acting *pro se*, filed a petition in the trial court in both cases to vacate or set aside his sentence pursuant to O.R.C. § 2953.21. (ECF No. 10-1, Exhibits 43-44). In his petition, Mr. Lenard argued, among other things, that there were irregularities in the jury deliberations and that his right to an impartial jury was violated because Juror Number Five was biased against him.

On May 6, 2019, the trial court denied Mr. Lenard's petitions. (ECF No. 10-1, Exhibits 54-55). On June 5, 2019, Mr. Lenard, acting *pro se*, filed notices of appeal to the Eighth Appellate District in both cases. (ECF No. 10-1, Exhibits 55-56). On October 15, 2019, Mr. Lenard filed his appellate brief, raising the following assignments of error:[2]

1. The trial court erred to the prejudice of the appellant when it denied Claim No: 1 as resjudicata. Appellant's defense attorney withheld expert testimony of his mental health condition P.T.S.D. which prejudiced appellant's defense. Appellant's mental health condition was a mitigating factor.

2. The trial court erred to the prejudice of the appellant when it denied Claim No. 2 as res judicata. The prosecutor submitted inadmissible evidence to the grand jury for the indictment and presented inadmissible evidence to the jury in trial

---

[2] Mr. Lenard's assignments of error are presented verbatim.

because the alleged victims medical records were obtained without patient authorization.

3. The trial court erred and it was reversible error when it denied claim No. 3 as res judicata. The police and prosecution withheld exculpatory evidence that the trial court lacked jurisdiction to try appellant in Cuyahoga County.

4. The trial court erred to the prejudice of appellant when it found claim No. 4 had no merit. Defense counsel failed to challenge for cause Juror #5 and there were irregularities in the jury proceeding which denied appellant a fair trial.

(ECF No. 10-1, Exhibit 63).

On April 16, 2020, the Eighth Appellate District affirmed. (ECF No. 10-1, Exhibit 66). With respect to Mr. Lenard's jury bias claim, the court found that the evidence Mr. Lenard attached to his petition did not support his claim because Juror Number Five told Mr. Lenard's investigator that he did not have any problems with Mr. Lenard and did not realize the two went to high school together until after deliberations.

### E. Rule 26(B) Application

On July 23, 2018, Mr. Lenard, acting *pro se*, filed applications in the Eighth Appellate District to reopen his direct appeals pursuant to Ohio Appellate Rule 26(B). (ECF No. 10-1, Exhibit 67-68). Mr. Lenard's applications did not raise any claims regarding alleged juror bias. On July 31, 2018, the Eighth Appellate District struck his applications because they exceeded the maximum page limit. (ECF No. 10-1, Exhibits 69-70). Mr. Lenard refiled his applications on August 16, 2018. (ECF No. 10-1, Exhibits 71-72).

On December 5, 2018, the Eighth Appellate District denied Mr. Lenard's applications. (ECF No. 10-1. Exhibits 79-80). On January 14, 2019, Mr. Lenard filed a notice of appeal to the Ohio Supreme Court. (ECF No. 10-1, Exhibit 81). On April 3, 2019, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 10-1. Exhibit 82).

**F.** <u>**Second Motion for a New Trial**</u>

On October 11, 2022, Mr. Lenard, acting *pro se*, filed motions in the trial court in both cases for leave to file a motion for a new trial pursuant to Ohio Criminal Rule 33, arguing that he had uncovered new evidence establishing that Juror Number Five was biased against him. (ECF No. 10-1, Exhibits 83-84). On December 9, 2022, the trial court denied Mr. Lenard's motions. (ECF No. 10-1, Exhibits 87-88).

On January 4, 2023, Mr. Lenard filed a notice of appeal to the Eighth Appellate District in case number 15-CR-602274. (ECF No. 10-1, Exhibit 89). On July 12, 2023, Mr. Lenard filed a notice of delayed appeal in case number 15-CR-602350, along with a motion for leave to file a delayed appeal. (ECF No. 10-1, Exhibits 94-95). The Eighth Appellate District granted Mr. Lenard's motion and consolidated the appeals. (ECF No. 10-1, Exhibits 97-98).

On May 23, 2023, Mr. Lenard filed his appellate brief, raising the following assignment of error.

> 1. The trial court erred in failing to grant a new trial, or in the alternative, a more complete hearing on appellant's motion for leave for a new trial based on newly discovered evidence when it arbitrarily deviated from procedure in selecting the jury.

(ECF No. 10-1, Exhibit 90).

On December 14, 2023, the Eighth Appellate District affirmed the trial court, holding that Mr. Lenard's motion was untimely because he had not shown that he was unavoidably prevented from obtaining the evidence supporting his motion sooner. (ECF No. 10-1, Exhibit 99). The court also held that Mr. Lenard's claim was barred by res judicata because his argument had repeatedly been considered and rejected by the Eighth Appellate District.

On January 16, 2024, Mr. Lenard filed a notice of appeal to the Ohio Supreme Court.

8

(ECF No. 10-1, Exhibit 100). In his memorandum in support of jurisdiction, Mr. Lenard raised the following proposition of law:

1. Appellant was denied his right to due process as guaranteed by the 6th and 14th Amendments to the United States Constitution and prejudiced, when the trial court, the prosecution and defense attorney collaberated [*sic*] to violate procedure in *voir dire*.

(ECF No. 10-1, Exhibit 101). On March 5, 2024, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 10-1, Exhibit 102).[3]

**G.  Federal Habeas Action**

On September 30, 2024, Mr. Lenard, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Lenard's habeas petition raises a single ground for relief:

1. The trial court erred in denying his motion for leave to file a new-trial motion.

*Id.* at PageID # 5. In a memorandum accompanying his petition, Mr. Lenard framed his claim as follows:

Appellant was denied his right to due process as guaranteed by the 6th and 14th Amendments to the United States Constitution and prejudiced, when the trial court, the prosecution and defense attorney collaberated [*sic*] to violate procedure in *voir dire*.

(ECF No. 1-1, PageID # 17).

The Warden filed an answer/return of writ on March 27, 2025. (ECF No. 10). Mr. Lenard filed a response on April 7, 2025, which I will construe as his traverse. (ECF No. 11).

**IV. STANDARDS OF REVIEW AND GOVERNING LAW**

**A.  Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of

---

[3] On August 2, 2024, Mr. Lenard filed a delayed application for reconsideration in the Eighth Appellate District pursuant to Ohio Appellate Rules 26 and 14(B), arguing that he received the ineffective assistance of appellate counsel. (ECF No. 10-1, Exhibit 103). In his motion, Mr. Lenard did not raise any arguments relevant to his habeas claim. The Eighth Appellate District denied Mr. Lenard's motion on August 23, 2024. (ECF No. 10-1, Exhibit 104).

habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Lenard, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Lenard's § 2254 petition.

### B.  Exhaustion and Procedural Default

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain

consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the

11

alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted).

### D.  AEDPA Standard of Review

28 U.S.C. § 2254, as amended AEDPA, provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst* , 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75

(2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification

14

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS

Mr. Lenard asserts a single ground for relief, but he frames that ground for relief in two different ways. In his petition, he argues that the trial court violated his rights by denying his motion for a new trial and by doing so without holding a hearing. In his supporting memorandum, however, Mr. Lenard appears to also assert an underlying claim that his Sixth and Fourteenth Amendment rights were violated because the trial court, prosecution, and his own defense counsel permitted a biased juror to sit on the jury. The Warden addresses both formulations of Mr. Lenard's claim in his return of writ. In an abundance of caution, I will do the same.

### A.  <u>Denial of Motion for New Trial</u>

Mr. Lenard argues that the Ohio courts erred in denying his motion for a new trial as untimely because he provided new evidence, which he asserts he could not have discovered earlier, demonstrating that Juror Number Five was biased against him. Mr. Lenard also argues that the trial court erred in denying his motion without holding a hearing. The Warden responds that Mr. Lenard's arguments are not cognizable in a federal habeas proceeding. I agree.

"[T]the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986)). "[C]laims challenging state collateral post-conviction proceedings 'cannot be brought under the federal habeas corpus provision . . . because the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and . . . the traditional function of the writ is to

secure release from illegal custody." *Id*. (quoting *Kirby*, 794 F.2d at 246) (cleaned up). "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because [the habeas court] would not be reviewing any matter directly pertaining to his detention.'" *Id*. (quoting *Kirby*, 794 F.2d at 247); *see also Mock v. Bracy*, No. 4:22-cv-00937-PAB, 2023 WL 11807558, at *14 (N.D. Ohio May 19, 2023) (holding that challenge to state court's denial of motion for new trial was not cognizable under *Cress* and *Kirby* because it was a challenge to a state collateral post-conviction proceeding), *report and recommendation adopted*, 2024 WL 2347279 (N.D. Ohio May 22, 2024). Mr. Lenard's petition, which challenges the Ohio courts' denial of his postconviction motion for a new trial, runs afoul of that settled rule.

Even if Mr. Lenard were not alleging errors in state post-conviction proceedings, his claim would not be cognizable. Where a petitioner alleges that the state courts improperly denied his motion for a new trial, a federal habeas court can review the denial "only for constitutional error." *Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009). "To establish a constitutional due process claim, [a petitioner] must demonstrate that the trial court's denial of his motion for new trial was 'so egregious' that it violated his right to a fundamentally fair trial." *Id*. (citing *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). While Mr. Lenard argues that the trial court erred in denying his motion for a new trial, he has not established that the state court's ruling was so egregious that it violated his right to a fundamentally fair trial. Rather, the Eighth Appellate District reasonably determined that Mr. Lenard's claims were untimely and barred by the doctrine of res judicata under Ohio law.

The same is true of Mr. Lenard's argument that the trial court should have granted him a hearing on his motion for a new trial. "There is no free-standing federal constitutional right to a new trial nor to any particular procedure for deciding motions for new trial." *Young v. Wainwright*, No. 3:18CV2933, 2019 WL 13400363, at *2 (N.D. Ohio June 13, 2019). Thus, courts have rejected as non-cognizable a petitioner's argument that the Ohio courts should have held a hearing on the petitioner's motion for a new trial. *See Walker v. Schweitzer*, No. 5:17cv2361, 2020 WL 981431 at *14-15 (N.D. Ohio Feb. 7, 2020) (petitioner's argument that trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by failing to hold hearing on motion for new trial was not cognizable), *report and recommendation adopted*, 2020 WL 977965 (N.D. Ohio Feb. 28, 2020); *Ball v. Houk*, No. 1:05 CV 2120, 2007 WL 4556676, at *13 (N.D. Ohio Dec. 20, 2007) (report and recommendation) holding that question of whether to hold hearing on motion for new trial was within trial court's discretion and not cognizable in federal habeas proceeding). I therefore recommend that the Court dismiss Mr. Lenard's sole ground for relief as non-cognizable to the extent he bases his claim on the trial court's denial of his motion for a new trial or the trial court's failure to hold a hearing on that motion.

### B. **Juror Bias Claim**

In his supporting memorandum, Mr. Lenard also appears to argue the substance of his underlying juror bias claim—i.e., that his Sixth and Fourteenth Amendment rights were violated because he did not receive a trial by an impartial jury. Mr. Lenard further appears to argue that his trial counsel was ineffective in failing to raise the issue of Juror Number Five's bias during *voir dire*. The Warden responds that, to the extent Mr. Lenard is attempting to assert those claims in his petition, they are time-barred, procedurally defaulted, and without merit. I agree.

### 1. *Statute of Limitations*

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). The one-year limitations period begins to run from the latest of four dates:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Cases become final for purposes of § 2244(d)(1)(A) when the time to file a direct appeal has expired, including the time to file a petition for a writ of certiorari to the United States Supreme Court. *See Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Here, the Eighth Appellate District decided Mr. Lenard's direct appeal on May 24, 2018. (ECF No. 10-1, Exhibit 24). Under Rule 7.01 of the Ohio Supreme Court Rules of Practice, Mr. Lenard had 45 days, or until July 8, 2018, to file a notice of appeal to the Ohio Supreme Court. Mr. Lenard did not file a notice of appeal by July 8, 2018, so his conviction became final on that date, and the statute of limitations began to run the next day. Under § 2244(d)(1)(A), Mr. Lenard had one year, or until July 9, 2019, to file his habeas petition. However, Mr. Lenard did not

file his petition until September 30, 2024, nearly five years later. His petition is therefore untimely unless either a later start date or some form of tolling applies.

### a. § 2244(d)(1)(D)

Mr. Lenard argues that his motion for a new trial was timely because he did not discover the evidence supporting his petition until 2022, when he obtained affidavits from witnesses substantiating his assertion that Juror Number Five was biased against him. Construing Mr. Lenard's *pro se* argument broadly, I will assume that he is also arguing that his petition is timely under § 2244(d)(1)(D), which provides that the statute of limitations runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

In determining the triggering date under § 2244(d)(1)(D), a court looks at "'when a duly diligent person in petitioner's circumstances would have discovered' the factual predicate for his claim." *Smith v. Meko*, 709 F. App'x 341, 344 (6th Cir. 2017) (quoting *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006)). "The due-diligence standard in § 2244(d)(1)(D) 'does not require maximum feasible diligence, only 'due,' or reasonable diligence.'" *Rucker v. Genovese*, 834 F. App'x 126, 127 (6th Cir. 2020) (quoting *DiCenzi*, 452 F.3d at 470). The petitioner bears the burden of establishing that he has exercised due diligence. *See Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002).

Importantly, "[t]he relevant inquiry under 28 U.S.C. § 2244(d)(1)(D), is not when the petitioner could have or did obtain *the evidence* he relies upon in support of his habeas claims. Instead, the relevant inquiry is when the petitioner did or could have discovered the *factual predicate* for his habeas claim." *Porter v. Bowerman*, No. 1:19-cv-210, 2019 WL 8164771, at *8 (N.D. Ohio Sept. 23, 2019), *report and recommendation adopted*, 2020 WL 1083629 (N.D. Ohio Mar. 6, 2020); *see also Zielinski v. Coleman*, No. 3:17CV1569, 2018 WL

3352989, at *6 (N.D. Ohio June 12, 2018) (report and recommendation) ("the critical determination is not when a petitioner could have discovered the legal basis or all the evidence supporting the claim, but merely the factual predicate") (citation and quotations omitted). Moreover, newly-discovered evidence cannot constitute the "factual predicate" for a claim under § 2241(d)(1)(D) where the evidence is "merely cumulative to the evidence already presented by the defense at trial." *Souter v. Jones*, 395 F.3d 577, 587 (6th Cir. 2005).

Judged against those standards, Mr. Lenard has not shown that his claim is timely. Rather, it is undisputed that Mr. Lenard knew at the time of trial that Juror Number Five attended high school with him and that there were alleged ill-feelings between the two. Indeed, part of Mr. Lenard's claim in this proceeding is that his own lawyer failed to seek Juror Number Five's exclusion during *voir dire* after Mr. Lenard informed his counsel that Juror Number Five was biased against him. While Mr. Lenard argues that the evidence he submitted in connection with his new trial motion allowed him to substantiate his argument for the first time, that is not the relevant inquiry under § 2241(d)(1)(D). Because Mr. Lenard knew the factual predicate of his due process claim at the time of trial, his alleged inability to obtain supporting affidavits sooner does not entitle him to a later start date of the statute of limitations.

### b.  *Statutory or Equitable Tolling*

Mr. Lenard may also show that his petition is timely if he can demonstrate that some form of tolling applies. While he does not directly argue for any particular tolling doctrine in his petition or his traverse, his state court postconviction filings and his assertion that his claim is based on newly-discovered evidence do implicate potential tolling considerations. Thus, in an abundance of caution, I will address whether either statutory or equitable tolling may apply.

§ 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Accordingly, "[t]he one-year period of limitations is tolled" while a properly filed application for state post-conviction or other collateral review is pending. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459 (6th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2)).

On June 15, 2018, while his direct appeal was pending, Mr. Lenard filed a petition to vacate or set aside his sentence under O.R.C. § 2953.21. (ECF No. 10-1, Exhibits 43-44). The Warden concedes that Mr. Lenard's petition tolled the statute of limitations through April 16, 2020, the date that the Eighth Appellate District affirmed the trial court's order denying the petition. (ECF No. 10-1, Exhibit 66).

Mr. Lenard did not appeal the Eighth Appellate District's decision to the Ohio Supreme Court, and there is some uncertainty regarding whether the statute of limitations is tolled during the period where a defendant could have filed an appeal to a state supreme court but did not do so. *Compare Davis v. Sloan*, No. 1:19 CV 1456, 2019 WL 10248636, at *8 (N.D. Ohio Nov. 7, 2019) (holding that AEDPA statute of limitations began to run the day after petitioner's deadline expired to file appeal to Ohio Supreme Court from denial of motion to vacate plea), *report and recommendation adopted*, 2020 WL 5096396 (N.D. Ohio Aug. 28, 2020), *with Schwirzinski v. Bunting*, No. 3:15 CV 214, 2015 WL 6501240, at *9 (N.D. Ohio Oct. 27, 2015) ("Under § 2244(d)(2), unlike § 2244(d)(1), the statute of limitations is not tolled for the time period within which a defendant can file an appeal if the defendant does not file a timely appeal."). I will give Mr. Lenard the benefit of the doubt, however, and

21

will assume that the limitations period was tolled until June 1, 2020, the date on which his deadline to file an appeal to the Ohio Supreme Court expired.

On November 14, 2016, while his direct appeal was pending, Mr. Lenard filed his first motion for a new trial. (ECF No. 10-1, Exhibits 27-28). The trial court did not deny Mr. Lenard's motion until February 24, 2020, and the Eighth Appellate District did not affirm until September 15, 2022. (ECF No. 10-1, Exhibits 31-32, 41). However, the Eighth Appellate District affirmed on the basis that Mr. Lenard's motion for a new trial was untimely under state law. Under § 2244(d)(2), only a "properly filed" postconviction petition tolls AEDPA's statute of limitations, and it is well-settled that an untimely motion is not "properly filed" for purposes of § 2244(d)(2). *See Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Mr. Lenard thus is not entitled to statutory tolling for the period during which his first motion for a new trial was pending.

Mr. Lenard also filed a second motion for a new trial in October 2022. (ECF No. 10-1, Exhibits 83-84). That motion cannot serve to toll the AEDPA statute of limitations, however, as statutory tolling under § 2244(d)(2) "does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quotation omitted); *see also Keeling*, 673 F.3d at 462 ("Because the one year statute of limitations period had already expired when Keeling filed the motion, statutory tolling does not apply."). By the time Mr. Lenard filed his second motion for a new trial, the AEDPA statute of limitations had already expired on June 1, 2021, more than a year earlier. Mr. Lenard thus cannot avail himself of statutory tolling under § 2244(d)(1)(D).

That conclusion does not end the analysis. Because AEDPA's one-year statute of

limitations is not jurisdictional, a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show that: (1) he pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Holland*, 560 U.S. at 649); *Keeling*, 673 F.3d at 462. "Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling*, 673 F.3d at 462 (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)).

Mr. Lenard has not met his burden of persuading me that equitable tolling should apply here. As discussed above, he was aware of Juror Number Five's alleged bias at the time of trial. While Mr. Lenard asserts that he only recently obtained affidavits and other evidence to support his argument, he has not shown that he worked diligently to obtain that evidence sooner. Nor has Mr. Lenard shown that any extraordinary circumstance stood in his way of timely filing his habeas petition. Accordingly, I conclude that equitable tolling does not apply. I recommend that the Court dismiss Mr. Lenard's petition as time-barred to the extent he asserts that his due process rights were violated by the presence of a biased juror or by his counsel's failure to seek exclusion of that juror.

### 2. *Procedural Default*

Alternatively, I recommend that the Court dismiss Mr. Lenard's claim because he procedurally defaulted on it. As noted above, procedural default occurs either where a petitioner either fails to comply with a state procedural rule that prevented the state courts from reaching the merits of the claim or where the petitioner does not raise the claim before the state courts while state remedies are still available. *See Williams*, 460 F.3d at 806.

23

Here, Mr. Lenard did not raise any claim based on alleged juror bias in his direct appeal. Instead, his raised the claim for the first time in his first motion for a new trial. (ECF No. 10-1, Exhibits 27-28). In that motion, Mr. Lenard argued both that Juror Number Five was biased against him and that there were improprieties with the jury's deliberation process. The trial court denied Mr. Lenard's motion without explaining its reasons. (ECF No. 10-1, Exhibits 31-32). The Eighth Appellate District affirmed, holding that Mr. Lenard's claim was untimely and barred by res judicata:

> {¶ 9} In his motion, appellant claimed that he knew juror No. 5, because he and the juror went to high school together and graduated in the class of 1997. According to appellant, he and juror No. 5 had "unpleasant or bad experiences" with each other in high school, mostly regarding sports. Appellant further contended that, more recently, leading up to their 2017 high school reunion, he and juror No. 5 had a "verbal altercation." According to appellant, this "bad blood" between him and juror No. 5 "may" have led the juror to have a "tainted or warped predetermined bias" against him. The motion also established that the juror No. 5 issue was discussed at length with counsel and that juror No. 5 was kept on the jury as part of the trial strategy.

> {¶ 10} Appellant further asserted that he learned "new" information about juror No. 5 through a fellow inmate after trial. This "new" information was that juror No. 5 posted his thoughts about this case on social media. Appellant argued that the "new" evidence helped to establish the juror "had a predetermined outlook on the case, he was bias[ed], [and] he was prejudicial" against appellant.

> {¶ 11} In regard to appellant's grounds for a new trial under R.C. 2945.79(A) and (B), his motion was untimely. By appellant's own admission, he filed his motion 18, rather than 14, days after the trial court's journalization of the jury's verdict. In regard to appellant's contention that he had 120 days to file the motion on the ground of newly discovered evidence under R.C. 2945.79(F), we disagree that the evidence appellant relies on is newly discovered.

> {¶ 12} Appellant's awareness of juror No. 5 was not "new." Appellant acknowledged in his motion for a new trial that he was aware of the juror at trial and brought it to the attention of his trial counsel. We are also not persuaded that appellant learned "new" information about the juror from an inmate. Crim.R. 33(A)(6) governing motions for a new trial based on newly discovered evidence requires an affidavit from the witness who is expected to provide the new evidence. Appellant's motion was not accompanied by an affidavit.

> {¶ 13} Because the ground on which appellant sought a new trial is not "new" evidence, his claim is barred under the doctrine of res judicata. The doctrine of res

judicata establishes that a final judgment of conviction bars a convicted defendant, who was represented by counsel, from raising and litigating in any proceeding, except a direct appeal from that judgment of conviction, any defense or any claimed lack of due process that was raised or could have been raised by the defendant on appeal. *State v. Szefcyk*, 77 Ohio St.3d 93, 96, 671 N.E.2d 233 (1996). Appellant could have raised this issue in his direct appeal, but failed to do so.

(ECF No. 10-1, Exhibit 41). The Eighth Appellate District likewise held that Mr. Lenard's claim was barred by res judicata when he raised it in his second motion for a new trial. (ECF No. 10-1, Exhibit 99, ¶ 14).

The Sixth Circuit has "repeatedly held that Ohio's *res judicata* rule is an adequate and independent state procedural ground for purposes of procedural default." *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012); *see also Hand v. Houk*, 871 F.3d 390, 409 (6th Cir. 2017) ("We have previously held that an Ohio court's application of the *res judicata* doctrine is an adequate and independent state ground that bars federal habeas relief."). Likewise, "courts in the Sixth Circuit appear to consider a state court's denial of a motion as untimely as a procedural default." *Mock*, 2024 WL 2347279 , at *18 n. 20 (citing cases); *see also Petrone v. Bunting*, No. 5:13-cv-02187, 2015 WL 9918661, at *9-11 (N.D. Ohio Dec. 10, 2015) (holding that timeliness requirement of motions for new trial under Ohio Criminal Rule 33 constituted adequate and independent state ground and that failure to file timely motion resulted in procedural default), *report and recommendation adopted*, 2016 WL 320265 (N.D. Ohio Jan. 27, 2016). Mr. Lenard has thus procedurally defaulted on his claim.

Mr. Lenard's procedural default can be excused if he demonstrates either cause and prejudice or that failure to consider his claim on the merits will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. In his traverse, Mr. Lenard argues that his appellate counsel was ineffective in failing to raise the juror bias claim in his direct appeal. I will construe Mr. Lenard's argument broadly as one that his procedural default should be

excused because he received the ineffective assistance of appellate counsel, which can serve as cause to excuse a procedural default. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). "However, 'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'" *Id*. (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Mr. Lenard never asserted a claim of ineffective assistance of appellate counsel on this basis in the Ohio courts, and any alleged ineffective assistance thus cannot serve to excuse his procedural default. Nor has Mr. Lenard shown that he is actually innocent of the crimes for which he was convicted, as required to invoke the fundamental miscarriage of justice exception. *See Schlup*, 513 U.S. at 324. Accordingly, I alternatively recommend that the Court dismiss Mr. Lenard's claim as procedurally defaulted to the extent he is asserting a due process claim based on alleged juror bias or his counsel's failure to seek the exclusion of Juror Number Five. In the interest of completeness, however, I will consider the merits of Mr. Lenard's claim as well.

### 3. *Merits*

The Sixth Amendment provides that a criminal defendant has "[a] right to a speedy and public trial, by an impartial jury . . . ." U.S. CONST. amend. VI. "An adequate voir dire is part of that guarantee." *Allen v. Mitchell*, 953 F.3d 858, 864 (6th Cir. 2020). "The presence of even a single biased juror deprives a defendant of his right to an impartial jury." *Williams v. Bagley*, 380 F.3d 932, 944 (6th Cir. 2004).

"Bias may be actual or implied." *Treesh v. Bagley*, 612 F.3d 424, 437 (6th Cir. 2010). "'Actual bias is bias in fact—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'" *Id*. (quoting *Hughes v. United States*, 258 F.3d 453, 463 (6th Cir. 2001)) (internal quotations omitted). By contrast, "[t]he doctrine of presumed or implied, as opposed to actual, bias provides that, in certain extreme or

26

exceptional cases, courts should employ a conclusive presumption that a juror is biased." *Id*. (quoting *Johnson v. Luoma*, 425 F.3d 318, 326 (6th Cir. 2005)) (quotations omitted). A court may presume bias "only where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Id*. (quoting *Johnson*, 425 F.3d at 326).

"The party seeking to exclude a juror because of bias must demonstrate that the potential juror lacks impartiality." *Mitchell*. 953 F.3d at 864. "When a juror's impartiality is at issue, the pertinent question is whether the juror swore 'that [he] could set aside any opinion [he] might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.'" *Id*. (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)). "The trial court's resolution of these questions is a matter of historical fact which is entitled to a presumption of correctness under 28 U.S.C. § 2254(d)(2)." *Id*.

Mr. Lenard argues that Juror Number Five was biased against him because Juror Number Five is a "known rival" of his dating back to high school and because the two have had a "tumultuous relationship." (ECF No. 1-1, PageID # 20, 25). Mr. Lenard also argues that he had a verbal altercation with Juror Number Five prior to a high school reunion in 2017. *Id*. at PageID # 23. In his second motion for a new trial, Mr. Lenard submitted affidavits from several individuals attesting to the bad relationship between Juror Number Five and Mr. Lenard. (ECF No. 10-1, Exhibits 83-84). Mr. Lenard argues that he raised concerns regarding Juror Number Five during *voir dire*, but that his counsel, the trial court, and the prosecution conspired to ignore those concerns and to permit a biased juror to sit on the jury.

The Eighth Appellate District addressed the merits of Mr. Lenard's juror bias claim when it affirmed the trial court's denial of his petition to set aside his sentence, rejecting it as

follows:

{¶ 38} Evid.R. 606(B), regarding an inquiry into the validity of a verdict, forbids a juror from testifying as to "any matter or statement occurring during the course of the jury deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict * * * or concerning his mental processes in connection therewith." A juror may testify, however, regarding "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented." Evid.R. 606(B). Thus, under the rule, "[i]n order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established." *State v. Schiebel*, 55 Ohio St.3d 71, 75, 564 N.E.2d 54 (1990). "This foundation must consist of information from sources other than the jurors themselves * * * and the information must be from a source that possesses firsthand knowledge of the improper conduct." Id. at 76, 564 N.E.2d 54.

{¶ 39} Obviously, Evid.R. 606(B) would have prohibited consideration of an affidavit from the juror himself. Lenard attempted to circumvent the rule by supplying a transcript of a recorded conversation between a criminal investigator and the juror. Under Evid.R. 606(B), however, the transcript is not admissible and the evidence contained within it – the juror's statements to the investigator about the jury deliberations – is incompetent because the information does not come from a source other than the juror with firsthand knowledge of any improper conduct. Accordingly, Lenard failed to provide evidence to demonstrate he was entitled to relief on this claim.

{¶ 40} Furthermore, even if we were to consider the transcript, we would find it does not support Lenard's claims. The transcript reflects that the juror at issue said he "never had a problem with [Lenard]," and did not even realize until after deliberations that he went to high school with him. (Tr. 3, 37-38.) "When a defendant bases an ineffective assistance of counsel claim on an assertion that his counsel allowed the impanelment of a biased juror, the defendant 'must show that the juror was actually biased against him.'" *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 67, quoting *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir.2001). The transcript demonstrates that Lenard cannot make such a showing. Furthermore, the transcript demonstrates that the only reason the juror is "not as comfortable" now with his verdict is because subsequent to the verdict in Lenard's cases, the juror was involved in a domestic violence situation and is now on probation, a situation he said might have caused him to think differently about Lenard's cases. (Tr. 28-29.) The juror's newly realized empathy for defendants accused of domestic violence does not demonstrate there were any irregularities in the jury deliberations in Lenard's cases, however.

{¶ 41} The trial court did not abuse its discretion in finding that counsel was not ineffective and that Lenard failed to offer evidence to support his claim of alleged irregularities during jury deliberations. The fourth assignment of error is overruled.

28

(ECF No. 10-1, Exhibit 66).

Applying AEDPA deference, the Eighth Appellate District's decision was not contrary to or a misapplication of clearly established law. The Eighth Appellate District applied the proper legal standard, noting that Mr. Lenard had the burden of showing that Juror Number Five was actually biased against him. The Eighth Appellate District also reasonably concluded that Mr. Lenard failed to meet that burden in light of Juror Number Five's statement that he did not have a problem with Mr. Lenard and did not recall that the two went to high school together. Moreover, while Mr. Lenard contends that the affidavits he submitted with his second new trial motion disprove Juror Number Five's statements, I cannot say that the Eighth Appellate District made a clear factual error or that its decision was objectively unreasonable.[4] Because fair-minded jurists could agree with the Eighth Appellate District's holding, I alternatively recommend that the Court deny Mr. Lenard's juror bias claim on the merits.

Mr. Lenard also appears to argue that his trial counsel was ineffective in failing to seek Juror Number Five's exclusion. A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Under the first prong, the petitioner must

---

[4] In *Remmer v. United States*, 347 U.S. 227 (1954), the Supreme Court held that a defendant who makes a prima facie case of juror bias is entitled to a hearing. *Id.* at 229. "Although a defendant 'must do more than simply raise the possibility of bias' to be entitled to a *Remmer* hearing, 'a colorable claim of extraneous influence' is sufficient." *Smith v. Nagy*, 962 F.3d 192, 199-200 (6th Cir. 2020) (quoting *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005)) (cleaned up). Mr. Lenard does not cite *Renner* in his petition or his traverse. Regardless, the Eighth Appellate District did not act contrary to or misapply clearly established law in concluding that Mr. Lenard failed take make a showing that Juror Number Five was potentially biased against him. In addition, Mr. Lenard himself concedes that his counsel, the trial court, and the prosecution discussed Juror Number Five's potential bias off the record during *voir dire*. (ECF No. 1-1, PageID # 29).

overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Should counsel perform so deficiently during the jury selection process so as to deny the defendant his Sixth Amendment right to an impartial jury, the defendant may be entitled to relief on the basis of ineffective assistance of counsel." *Hanna v. Ishee*, 694 F.3d 596, 616 (6th Cir. 2012).

The *Strickland* standard is "extremely deferential.'" *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting *Strickland*, 466 U.S. at 687).

The Eighth Appellate District addressed Mr. Lenard's ineffective assistance claim on the merits as an alternative holding when it affirmed the denial of his petition to set aside his sentence. Where a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide an additional layer of AEDPA deference to that adjudication under § 2254(d). *See Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with

scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

As noted above, the Eighth Appellate District held that Mr. Lenard's ineffective assistance of trial counsel claim was without merit because he failed to show that Juror Number Five was actually biased against him. (ECF No. 10-1, Exhibit 41, ¶¶ 40-41). That ruling was not contrary to or a misapplication of clearly established law. To the contrary, the Sixth Circuit has held that an ineffective assistance of counsel claim based on trial counsel's failure to seek exclusion of an allegedly biased juror fails where the petitioner does not show that the juror was actually biased. *See Lang v. Bobby*, 889 F.3d 803, 811 (6th Cir. 2018) ("because Lang's juror bias claim lacks merit, there is no merit to his related claim of ineffective assistance of trial counsel"). Having reasonably concluded that Mr. Lenard failed to show Juror Number Five was actually biased against him, the Eighth Appellate District likewise did not err in rejecting his ineffective assistance of counsel claim. I thus alternatively recommend that the Court deny Mr. Lenard's sole ground for relief on the merits to the extent he is raising a juror bias claim or a claim of ineffective assistance of counsel.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  **Legal Standard**

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. <u>Analysis</u>

Mr. Lenard has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Lenard's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability. Finally, I recommend that Warden Jay Forshey be substituted for Warden Doug Luneke as the respondent in this proceeding.

Dated:  August 5, 2025

*/s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within  the  specified  time  may  result  in  the  forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent

appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).